CITY OF TALLMADGE, Appellant,

v.

McCOY, Appellee.*

[Cite as *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604.]

Court of Appeals of Ohio,
Summit County.

No. 16667.

Decided Aug. 31, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 71 Ohio St.3d 1445, 644 N.E.2d 415.

*Richard A. Schunk,* Tallmadge Law Director, for appellee.

*Walter Lawrence,* for appellee.

BAIRD, Judge.

This cause comes before the court upon the appeal of plaintiff-appellant, the city of Tallmadge, from a pretrial order of the Cuyahoga Falls Municipal Court granting defendant-appellee Brad A. McCoy's motion to suppress evidence gained after a traffic stop.

On December 26, 1993, appellee was charged with driving under the influence of alcohol (Tallmadge Ordinance 333.01), resisting arrest (R.C. 2921.33), and possession of marijuana (Tallmadge Ordinance 513.03). Prior to trial, appellee filed a motion to suppress, claiming that the stop and seizure by the arresting officer violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14, of the Ohio Constitution because the officer lacked specific and articulable facts to justify the stop. Appellee requested suppression of all evidence, including statements obtained from him and his refusal to take the breath alcohol content ("BAC") test, and dismissal of all charges filed against him. Following an evidentiary hearing, the court granted appellee's motion to suppress. The city of Tallmadge appeals, citing one assignment of error:

"The lower court erred in granting appellee's motion to suppress."

## A

As a preliminary procedural matter, appellee argues that this appeal should be dismissed because the trial court did not date-stamp its decision to sustain appellee's motion to suppress. *State v. Domers* (1991), 61 Ohio St.3d 592,

575 N.E.2d 832, syllabus. The trial court's decision on the motion was issued in open court and entered into the docket by means of a written decision, dated and signed by the judge on February 17, 1994, and delivered to the clerk. The clerk entered the decision on the transcript of docket and journal entries and added the written decision to the attached journal on February 17, 1994. On February 22, 1994, the city of Tallmadge filed its notice of appeal and included a Crim.R. 12(J) certification. Crim.R. 12(J) provides:

" * * * The state may take an appeal as of right from the granting of a motion for the return of seized property, or from the granting of a motion to suppress evidence if, in addition to filing a notice of appeal, the prosecuting attorney certifies that: (1) the appeal is not taken for the purpose of delay; and (2) the granting of the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

"Such appeal shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion. * * * " See, also, R.C. 2945.67.

"The certification element of Crim.R. 12(J) provides the defendant with protection from prosecutorial abuse and harmonizes the appeal with the final order requirement of the Ohio Constitution." *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 23, 573 N.E.2d 22, 25. App.R. 4(B)(4) requires that a Crim.R. 12(J) appeal be filed within "seven days of entry of the judgment or order appealed." App.R. 4(D) defines "entry" as "when a judgment or order is entered under Civ.R. 58(A) or Crim.R. 32(B)." Pursuant to Crim.R. 32(B), "[a] judgment is effective only when entered on the journal by the clerk."

The critical date in determining whether an appeal is timely filed is the date of filing, which "is usually, though not exclusively, evidenced by a file-stamp date on the face of the document which contains the trial court's judgment order." *Toledo v. Fogel* (1985), 20 Ohio App.3d 146, 149, 20 OBR 180, 182, 485 N.E.2d 302, 305. In *In re Hopple* (1983), 13 Ohio App.3d 54, 55, 13 OBR 58, 468 N.E.2d 129, 130, the court noted:

"It is impossible for an appellate court, on its own, to determine whether an appeal is timely filed, if the judgment entry from which the appeal is being prosecuted bears no file stamp or if certified proof of the date of journalization is not forthcoming."

In the case *sub judice*, we are satisfied that the certified record of the Municipal Court of Cuyahoga Falls, indicating that the court's decision was filed with the clerk and journalized in the transcript of docket and journal entries on

February 17, 1994, constitutes a final appealable order for purposes of this appeal and that the state complied with the requirements of Crim.R. 12(J) in perfecting this appeal.

B

With respect to the substantive issue of this appeal, the sustaining of appellee's motion to suppress, the only testimony at the evidentiary hearing was that of Officer Robert Douglas, a twenty-year veteran with the Tallmadge Police Department. Douglas testified that approximately eighteen of his twenty years on the Tallmadge police force were spent on night patrol. He also testified that, in addition to his basic police academy training and several in-service schools, he had attended an Advanced DUI Detection School in Columbus, Ohio.

In the morning hours of December 26, 1993, Douglas was on routine patrol in a marked cruiser when he spotted a distinctive "orange-red color" 1979 Chevrolet truck. He knew the truck belonged to Brett McCoy, appellee's brother, whom he had arrested ten days earlier for driving under the influence of alcohol, and he knew that, as a result of the arrest, Brett McCoy's driver's license had been suspended. Believing that Brett McCoy was driving without a license, Douglas turned to follow the truck. He testified that, while in pursuit, he believed the driver to be speeding because of "the difficulty I had catching up with him." By the time Douglas reached the truck at approximately 2:45 a.m., it had been pulled to a stop in front of Brett McCoy's home. Douglas testified, "As soon as I got up there and I could look in the window and talk to the driver I could see it wasn't who I originally thought. * * * [O]nce I could smell the alcohol and see the eyes, I decided to talk with him further." He further stated that he could "smell a strong smell of alcoholic beverage" and could see "that his eyes were red and had a wetness and a glassiness" to them, and it appeared to him "that he had possibly been drinking." At this point, Douglas asked appellee to step out of the car, and he administered a horizontal gaze nystagmus test, a six-part eye test. Appellee failed all parts.

Douglas then indicated to appellee that he wanted to perform a couple more field sobriety tests. When appellee refused and began to walk away from Douglas and toward his house, he was arrested for driving under the influence of alcohol.

Upon cross-examination, Douglas indicated that he had not observed erratic driving or weaving by appellee but that he believed appellee was speeding because of the difficulty he had in catching up with him.

The arrest report filed by Douglas indicated the following:

"I was eastbound on East Avenue, saw subject pull out of Cambrian headed towards circle. It looked like subject I had just arrested on 12/14/93, who had an ALS suspension. The subject went North on North Avenue and I caught up with subject pulling in front of 77 W. Garwood, parked on the street. The subject was brother of the owner of the vehicle."

In granting appellee's motion to suppress, the trial court stated, "As soon as you walked up to that truck and saw that it was not the party you arrested two weeks ago, you should have said 'good night' * * *." Appellant argues that the court incorrectly applied the standard for a justifiable investigatory stop.

In reviewing a motion to suppress, an appellate court "is to determine whether the court's findings are supported by competent, credible evidence." *State v. Self* (1990), 56 Ohio St.3d 73, 80, 564 N.E.2d 446, 453; *State v. Williams* (1986), 23 Ohio St.3d 16, 19, 23 OBR 13, 16, 490 N.E.2d 906, 910. With respect to an investigatory stop, "[a] law enforcement officer must have a reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping a vehicle." *State v. Vanscoder* (1994), 92 Ohio App.3d 853, 855, 637 N.E.2d 374, 375, citing *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880–1881, 20 L.Ed.2d 889, 906.

■ Although appellee elicited much testimony from Douglas to the effect that he had not observed appellee driving erratically, there is no requirement that an officer observe erratic driving before an investigative stop can be made. *Stow v. Lauro* (Apr. 6, 1994), Summit App. Nos. 16337 and 16342, unreported, at 4, 1994 WL 119278. Pursuant to R.C. 4507.02, no person may drive an automobile in Ohio if his driver's license has been suspended. Douglas believed that Brett McCoy's truck was being driven by Brett McCoy, whose license he knew had been suspended pursuant to his arrest by Douglas less than two weeks earlier. It is reasonable to assume that the driver of a vehicle is most often the owner of the vehicle. *State v. Owens* (1991), 75 Ohio App.3d 523, 525, 599 N.E.2d 859, 860. Where an officer knows that the owner of a vehicle has a suspended operator's license and draws the rational inference that the owner of the vehicle is likely to be operating the vehicle, there exists sufficient reasonable suspicion to justify an investigatory stop. *Hillsboro v. Stroop* (Aug. 10, 1993), Highland App. No. 92CA824, unreported, 1993 WL 311784. Similarly, in the case *sub judice*, the investigatory stop was justified. Even if the stop had not been justified by Douglas's belief that an individual with a suspended driver's license was driving, the stop would have been justified by his belief that the driver was speeding. *State v. Vanscoder* (1994), 92 Ohio App.3d 853, 637 N.E.2d 374, citing *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906.

Appellee's position, and that of the trial court, however, is that once Douglas saw that Brett McCoy was not driving, he was required to make no further inquiry. Although the trial court did not cite specific authority for its decision, the factual analogy it describes appears to be from *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. In *Chatton*, a motion to suppress was sustained where a police officer, who had observed no license plates on a car, stopped the driver to question him. As the officer reached the vehicle, he observed a temporary license lying on the rear deck of the automobile directly beneath the rear window. The officer approached the driver anyway and asked to see his operator's license, which proved to be suspended. The *Chatton* court's inquiry properly focused on whether the police officer harbored an articulable and reasonable suspicion that the driver was violating the law "at the time [the driver] was detained and ordered to produce his driver's license." *Id.* at 61, 11 OBR at 251, 463 N.E.2d at 1239. In a *per curiam* opinion, the court held that when an officer approaching a stopped vehicle observes a temporary license visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. *Id.* at 63, 11 OBR at 253, 463 N.E.2d at 1240.

The crucial distinguishable fact in the case *sub judice* is that Douglas did not determine that the driver of the car was not Brett McCoy until he reached the window of the car. At that point, the smell of alcohol and appellee's red and watery eyes were apparent. Police officers are not expected to blind their eyes to probable violations of the law which confront them.

The rationale is similar to the reasoning employed in a closely analogous situation. Pursuant to the protections of the Fourth Amendment, exploratory searches are prohibited as an evidence-gathering tool. *Boyd v. United States* (1886), 116 U.S. 616, 624–632, 6 S.Ct. 524, 529–534, 29 L.Ed. 746, 749–751. However, under the "plain view" exception to the Fourth Amendment, evidence may be seized if the initial intrusion was legitimate, and the incriminating nature of the object is immediately apparent. *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. In the case *sub judice*, we have already established that Douglas's initial stop was legitimate. At the same time he discovered that Brett McCoy was not the driver, he discovered appellee's red, watery eyes, and smelled the alcohol on his breath. From his twenty years of experience as a police officer, most of which were spent on night patrol, the incriminating nature of appellee's symptoms was immediately apparent. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524

N.E.2d 489, 490. Based on our analysis of the facts of this case and the foregoing authority, we find that the investigatory stop of appellee was legitimate.

■ Appellee also argued in his motion to suppress that the arresting officer lacked probable cause to arrest defendant for operating under the influence of alcohol. Probable cause exists if the facts and circumstances within the arresting officer's knowledge would warrant a prudent man to believe an offense has been committed. *State v. Price* (1992), 80 Ohio App.3d 108, 111, 608 N.E.2d 1088, 1089. The existence of probable cause is a factual question. *State v. Pavao* (1987), 38 Ohio App.3d 178, 178, 528 N.E.2d 970, 971.

In this case, a number of facts support the conclusion that probable cause existed to believe that appellee was under the influence of alcohol. When an officer, after a lawful stop, observes that the driver has glassy, bloodshot eyes, a strong odor of alcohol on his breath, and is able to perform physical coordination tests only poorly, probable cause exists both for the detention for inquiry and the subsequent arrest for driving under the influence of alcohol. *State v. Williams* (Nov. 6, 1992), 83 Ohio App.3d 536, 615 N.E.2d 317. Each of the *Williams* indicators is present in this case. Douglas testified that he detected a strong odor of alcohol and observed red glassy eyes when he approached appellee. The arrest report form indicates appellee's admission that he had had "a couple" of beers. Douglas testified that he was certified to perform the horizontal gaze nystagmus test and that appellee failed all six parts. When appellee refused to perform additional field sobriety tests and walked away from Douglas, he was arrested. He subsequently refused to take the BAC test.

Pursuant to the foregoing authority and analysis, the investigatory stop in this case was warranted, and probable cause existed to arrest appellee for driving under the influence. The evidence suppressed by the trial court is therefore admissible, including statements of appellee and his refusal to take the BAC test.

The trial court's judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and COOK, J., concur.