OPINION
Defendant-appellant, Dale E. Wayble, appeals a conviction obtained in the Belmont County Court, Western Division, for driving under the influence of alcohol, in violation of R.C.4511.19(A)(3).
On May 12, 1996, the Village of Barnesville Police Department received a report of a possible DUI entering the Village of Barnesville. This report was received from an off-duty sergeant with the Belmont County Sheriff's Office, Bart Geisey. Patrolman David Norris responded to the corporate limits.
The patrolman parked the patrol car, at the corporate limits, and waited for the arrival of the possible DUI suspect and Sergeant Geisey. The patrolman observed the two vehicles enter the village, traveling on State Route 800, and proceeded to follow in order. At about this time, Sergeant Geisey pulled from the roadway, allowing Patrolman Norris to follow appellant directly.
Patrolman Norris continued to observe the vehicle as it traveled through the village. Patrolman Norris then observed appellant driving in an erratic manner. Specifically, Patrolman Norris testified that appellant's driving "was out of control", that "he threw the car abruptly into Mackee Drive" and appellant failed to signal his turn. Patrolman Norris then activated his pursuit lights in order to stop appellant.
Patrolman Norris approached the vehicle and requested to see appellant's driver's license and registration. After observing a strong odor of alcoholic beverage on appellant's breath, Patrolman Norris instructed appellant to step from the vehicle. Patrolman Norris then conducted field sobriety tests, particularly, the horizontal gaze and nystagmus, the walk and turn, the one legged stand and the finger to nose. Patrolman Norris determined that appellant failed each of the field sobriety tests. Appellant was placed under arrest for DUI. Patrolman Norris took appellant to the police department and administered a breath-alcohol-concentration test. The test resulted in a reading of .174 grams of alcohol per .210 liters of breath, well over the .10 limit allowed by R.C. 4511.19(A)(3).
Appellant entered a plea of not guilty in the Belmont County Court, Western Division. On July 1, 1996, appellant filed a motion to suppress the results of the BAC test. In that motion, appellant alleged that Patrolman Norris lacked reasonable suspicion to stop and/or probable cause to arrest him for DUI.
On August 14, 1996, a hearing on appellant's motion took place. At the hearing Patrolman Norris, Sergeant Geisey, and appellant testified.
On August 14, 1996, appellant's motion was overruled.
On December 13, 1996, appellant filed a second motion to suppress the results of the BAC test. In this motion, appellant alleged that the Village of Barnesville failed to substantially comply with Ohio Administrative Code 3701-53-04 as to the validity of the calibration solutions and Ohio Administrative Code 3701-53-02, as to the performance of a required RFI survey. The motion was subsequently overruled.
On July 28, 1998, appellant withdrew his not guilty plea and entered a plea of no contest. Consequently, the trial court found appellant guilty. This appeal followed.
At the outset, it should be noted that plaintiff-appellee, Village of Barnesville, has failed to file a brief in this matter. Therefore, pursuant to App.R. 18(C), "the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
Appellant sets forth two assignments of error for this court's review.
Appellant alleges in his, first assignment of error that:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS\SUPPRESS BASED UPON THE FACT THAT THE STATE DID NOT OPERATE IN SUBSTANTIAL COMPLIANCE WITH THE DEPARTMENT OF HEALTH REGULATIONS CONCERNING THE BAC DATAMASTER TEST."
In reviewing a motion to suppress this court has outlined the applicable standard of review in State v. Lloyd (1998), 126 Ohio App.3d 95, as follows:
 "This court has previously concluded that our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, 11, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802, 804-805. Naturally, this is the appropriate standard because `[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'
 State v. Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, 339, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831, 833. However, once we accept those facts as true, we must independently determine as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143-1144, citing State v. Dreher (July 28, 1992), Highland App. No. 786, unreported, at 5, 1992 WL 188501, and State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, unreported, at 3, 1992 WL 91647."
Under his first assignment of error, appellant advances two arguments. The first is that the Village of Barnesville failed to substantially comply with OAC regulations by improperly conducting the radio frequency interference (RFI) survey. Specifically, appellant argues that the Barnesville Police Department improperly administered the RFI survey by failing to perform the RFI survey with a hand held radio on each thirty-foot axis. Further, appellant contends that there is no evidence that the officer performing the BAC test removed his hand held radio. Therefore, appellant concludes, there may have been RFI during the administration of the breath test.
Before the results of a BAC test, given an accused, are admissible in evidence against him, it is incumbent upon the State to show that the instrument was in proper working order and the BAC test was conducted by a senior operator. Cincinnati v.Sand (1975), 43 Ohio St.2d 79. Results of a BAC test may only be admitted into evidence if the sample has been analyzed in accordance with a method approved by the Ohio Director of Health.State v. Kauffman (1995), 106 Ohio App.3d 831. Substantial compliance with OAC regulations is required for SAC test results to be admissible. Defiance v. Kretz (1991), 60 Ohio St.3d 1 andState v. Plummer (1996), 22 Ohio St.3d 292.
The State has the burden of proof when establishing that a RFI survey was conducted in substantial compliance with regulations concerning blood-alcohol testing. State v. Adams (1992), 73 Ohio St.3d 735,743-744. Once that burden is met, then the defendant must establish prejudice before the evidence can be excluded. Seeid. Further, conducting a RFI survey in accord with the method approved by the Ohio Director of Health constitutes substantial compliance. See id.
In this case, there was competent, credible evidence that the procedures followed by the Barnesville Police Department substantially complied with OAC procedures governing RFI surveys. The record contains the completed RFI survey, Appendix H, demonstrating that the RFI survey had been completed on each required frequency. The Village also demonstrated that the RFI survey was conducted by a senior operator and that the RFI survey was conducted with two hand-held radios.
Appellant contends that "there was no evidence presented" that a radio frequency was not operated in the RFI affected zone at the time the BAC test was administered. When the contention is that a radio frequency was operated at the time of testing it is the one seeking to exclude the evidence that bears the burden.Adams, 73 Ohio App.3d at 743. There has been no such showing by appellant.
Absent a showing of prejudice to appellant the Village must merely demonstrate substantial compliance. In light of the record the trial court reasonably concluded that the Village had substantially complied with OAC standards governing RFI surveys.
Appellant's second argument under this assignment of error is that the calibration solution used by the Barnesville Police Department was not in substantial compliance with Ohio Department of Health procedures. Appellant's general argument is that the machine used to conduct the test was not properly calibrated due to improper authentication of the test solution.
To substantially comply with OAC 3701-53-04, the state need only show the solution was approved by the Director of Health and the test was conducted in accordance with the standard procedures provided in the OAC. State v. Taxis (Dec. 3, 1998), Summit App. No. 19038, unreported, 1998 WL 831807 at *2.
In this case, there was competent, credible evidence that the procedures followed by the Barnesville Police Department substantially complied with OAC procedures governing calibration solutions. See OAC 3701-53-04(A). See, also, R.C. 4511.19(D)(1). The record includes the requisite instrument check forms, indicating substantial compliance. The batch solution in question carried with it an authentication certificate signed by Dr. Peter Sonami. This fact demonstrates that the calibration solution was in accord with OAC regulations.
Appellant attacks the calibration on the basis of Dr. Sonami's signature to the authentication certificate. Appellant furthers his contention on a line of unreported Franklin Municipal Court cases that suggest Dr. Sonami's procedures are flawed.[1] In the proceedings below, appellant offered no evidence to contradict the Village's proof that the solution was anything other than compliant.
Accordingly, appellant's first assignment of error is without merit.
Appellant alleges in his second assignment of error that:
 "THE ARRESTING OFFICER DID NOT HAVE SUFFICIENT REASONABLE SUSPICIONS TO JUSTIFY AN INVESTIGATIVE STOP OF THE APPELLANT AND THE ARRESTING OFFICER DID NOT HAVE PROBABLE CAUSE TO ARREST APPELLANT."
In his second assignment of error appellant asserts that Patrolman Norris lacked a reasonable suspicion to justify an investigative stop and the requisite probable cause to make the arrest. Specifically, appellant contends that neither the tip nor Patrolman Norris's personal observations justified the investigative stop. Appellant concludes, due to these factors, that the trial court erred in not granting his motion to suppress.
In Lloyd, 126 Ohio App.3d at 102, this court found that it was established law that an officer does not need probable cause to make a traffic stop; that reasonable suspicion based on specific and articulable facts is adequate to justify a stop. According to the Lloyd court, "in reviewing a determination as to the reasonableness of a stop, an appellate court must give due deference to the police officer's training and experience." Id.
citing State v. Andrews (1991), 57 Ohio St.3d 86.
In this case, Patrolman Norris had two equally valid and independent bases upon which to justify a stop of appellant's vehicle. The record illustrates that Patrolman Norris followed appellant on State Route 800 for some distance where he observed appellant's erratic driving. Specifically, Patrolman Norris testified that appellant's driving "was out of control", that "he threw the car abruptly into Mackee Drive" and appellant failed to signal his turn. Consequently, Patrolman Norris pointed to specific and articulable facts supporting his reasonable suspicion that appellant had violated a traffic law.
Appellant contends that the officer actually activated his pursuit lights before he turned off of 800. He bases this contention on testimony given at the suppression hearing. Specifically, appellant points to conflicting testimony on the part of the Patrolman Norris and Sergeant Geisey as to when the pursuit lights were activated. This argument goes to the weight and credibility of the witnesses. Accordingly, we will defer to the trial court's resolution of that issue.
Viewing the initial stop in the totality of the circumstances, the evidence supports a finding that Patrolman Norris had a reasonable suspicion appellant was violating a traffic law.
With respect to appellant's contention that reasonable suspicion could not follow from a tip, in State v. Ramey (1998),129 Ohio App.3d 409, at 415-416, the First District set forth a carefully articulated discussion of the issue:
 "* * * The mere fact that the information relied upon by [an officer] was broadcast over the radio rather than experienced by him personally does not render it insufficient to create a reasonable suspicion. Adams v. Williams (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. The Ohio Supreme Court has determined that a police radio broadcast is a sufficiently reliable source to provide even probable cause to make a full arrest, let alone reasonable suspicion to justify an investigatory stop. State v. Fultz (1968), 13 Ohio St.2d 79, 42 O.O.2d 259, 234 N.E.2d 593, certiorari denied (1968), 393 U.S. 854, 89 S.Ct. 95, 21 L.Ed.2d 123. As observed by the court in Fultz, police are entitled to use modern technological advances to alert fellow officers that criminal activity is afoot, and the police radio is one such advance. Accordingly, `information received on a police radio is in the nature of an official communication and ordinarily it must be considered as a trustworthy source of information.' Id. at 81, 42 O.O.2d at 260, 234 N.E.2d at 594. Furthermore, an investigatory stop may be justified even though the criminal activity was not first observed by [717 N.E.2d 1158] a police officer, but, rather, by a citizen who then relayed the information to the police in the form of a `tip.' * * * Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized."
In the present case, the reliability of Sergeant Geisey's tip turns on his veracity, reliability, and basis of knowledge. Sergeant Geisey followed appellant about 15 miles on Interstate 70 into the Village of Barnesville. Sergeant Geisey contacted the Village police dispatch and informed her that he had observed the appellant driving in excessive speeds and an erratic manner, crossing both edge lines and nearly striking a guardrail. Patrolman Norris was made aware of the information via the dispatch. Patrolman Norris observed both vehicles enter the Village and followed behind. Sergeant Geisey pulled away from State Route 800 and Patrolman Norris followed behind appellant in order to observe his conduct.
The reliability of Sergeant Geisey's tip was buttressed by the fact that he is a police officer by trade and familiar with the procedures of this jurisdiction. He also is a Councilman in the Village of Barnesville, a fact going to veracity.
Viewing the tip in the totality of the circumstances, the evidence supports a finding that the tip carried sufficient indicia of reliability.
The remaining determination is whether Patrolman Norris had probable cause to arrest appellant for DUI. In Lloyd,126 Ohio App.3d at 104, this court held:
 "Before an arrest can take place, the police officer must have probable cause to believe that the individual committed a crime. State v. Timson (1974), 38 Ohio St.2d 122, 67 O.O.2d 140, 311 N.E.2d 16, paragraph one of the syllabus. It has been established that `[p]robable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged.' State v. Medcalf (1996), 111 Ohio App.3d 142, 147, 675 N.E.2d 1268, 1271, citing Huber v. O'Neill
(1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12, quoting Ash v. Marlow (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus. * * *"
In a case where, as here, a defendant has been arrested for DUI, this court has held that:
 "* * * the issue regarding probable cause turns on the court's assessment of whether, `at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol.' State v. Medcalf, 111 Ohio App.3d at 147, 675 N.E.2d at 1271, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225-226, 13 L.Ed.2d 142, 145, and State v. Timson,
at paragraph one of the syllabus. Moreover, the arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. State v. Van Fossen
(1984), 19 Ohio App.3d 281, 283, 19 OBR 452, 453-454, 484 N.E.2d 191, 193-194; State v. Taylor (1981), 3 Ohio App.3d 197, 198, 3 OBR 224, 225, 444 N.E.2d 481, 481-482. Basically, courts look at the totality of the circumstances when reviewing this type of case. State v. Medcalf, 111 Ohio App.3d at 147, 675 N.E.2d at 1271." Id., 126 Ohio App.3d at 104
Patrolman Norris testified that when he approached the vehicle, he observed a strong odor of an alcoholic beverage on appellant's breath. Additionally, appellant testified that he had consumed alcoholic beverages that evening. Moreover, appellant failed a battery of field sobriety tests, which was indicative to Patrolman Norris that appellant would likely test over the legal limit.
Appellant asserts that the horizontal gaze and nystagmus test performed was invalid due to the fact that the test was conducted facing Patrolman Norris' cruiser, while the pursuit lights were flashing. Appellant makes this blanket assertion without a single reference to support his claim. Therefore, without such reference in support, his claim is merely conclusory and without merit.
In light of the lawful stop, the strong odor of alcohol, appellant's performance on the field sobriety tests, and Patrolman Norris' general observations of appellant's demeanor, Patrolman Norris had probable cause to detain and arrest appellant for DUI.
Accordingly, appellant's second assignment of error is without merit.
The judgment of the trial court is affirmed.
Vukovich, J., and Waite, J., concurs.
APPROVED:
 ________________________ Gene Donofrio Judge
[1] Appellant failed to attach those opinions to his brief. An appellate court may choose to disregard as persuasive authority unreported opinions of other courts which are not appropriately cited or appropriately brought to the attention of the court by attaching them to any filing or to the briefs of either party.McNeal v. Cofield (1992), 78 Ohio App.3d 35, 37; Rule 2(G) (2) and (3) of the Supreme Court Rules for the Reporting of Opinions.