OPINION
Plaintiff-appellant, the state of Ohio, appeals a decision of the Clinton County Municipal Court granting a motion to suppress evidence filed by defendant-appellee, Charles Keilback. We reverse the trial court's decision.
On the morning of June 7, 2000, Sergeant Mike Wahl of the Clinton County Sheriff's Office observed a Chevrolet Chevette driven by Keilback pass him. Upon noticing that the vehicle did not have a front license plate but had a temporary tag on the back of the vehicle, the officer ran the vehicle's temporary tag number through L.E.A.D.S. (Law Enforcement Automated Data System). The dispatcher advised the officer that the tag was registered to a Chevrolet station wagon under the name of Charles Taylor, and that it had expired. The officer turned around and followed Keilback. While doing so, the officer was advised by another dispatcher that a person wanted in Warren County for aggravated burglary had been driving a vehicle belonging to a Charles Taylor. The officer pulled Keilback over.
Keilback provided the officer with his name and social security number. Using that information, the officer checked Keilback's driving record and discovered that Keilback's driver's license was under suspension. Keilback told the officer that the vehicle did not belong to him, but that he believed the temporary tag was valid. The officer ran the temporary tag's number a second time through L.E.A.D.S. This time, it came back valid. It was then discovered that V009352, and not the temporary tag's actual number, V009532, was originally checked by the dispatcher. The officer did not know whether he had called the temporary tag's number incorrectly the first time or whether it was incorrectly written down by the dispatcher. The officer testified he did not look at the temporary tag after he pulled Keilback over because, at that time, his attention was directed at Keilback, and not at the temporary tag. The officer also testified he discovered that Keilback was driving under suspension before he discovered the temporary tag was in fact valid.
Keilback was charged with driving while under suspension. On October 2, 2000, Keilback filed a motion to suppress evidence on the ground that the initial stop of his vehicle was invalid. Following a hearing on the motion, the trial court summarily granted Keilback's motion on January 23, 2001. The state appealed.
In its sole assignment of error, the state argues that the trial court erred by granting Keilback's motion to suppress. The state contends that the officer had reasonable and articulable suspicion to stop Keilback, and thus the investigatory stop of Keilback's vehicle was proper.
When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by substantial and credible evidence.State v. Williams (1993), 86 Ohio App. 3d 37, 41. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standard to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691.
It is undisputed that Keilback committed no traffic violation. The issue is then whether the initial stop of his vehicle was a proper investigatory stop under Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868. Pursuant to Terry, "a police officer may stop and investigate [a motorist], even without probable cause to arrest, when [the officer] reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."State v. Andrews (1991), 57 Ohio St.3d 86, 87. The existence of reasonable suspicion must be considered in light of the totality of the circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107. "[T]hese circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Andrews at 87-88.
The record clearly shows that the investigatory stop of Keilback was based upon the results obtained from the first L.E.A.D.S. check of Keilback's temporary tag. A request to police dispatch to run a motor vehicle's license plate number through L.E.A.D.S. does not constitute a stop. State v. Owens (1991), 75 Ohio App.3d 523, 525. At the time the officer pulled Keilback over, the officer believed the temporary tag was registered to a Chevrolet station wagon under the name of Charles Taylor, and that it had expired. Before pulling Keilback over, the officer had also been advised by dispatch that a person wanted in Warren County for aggravated burglary had been driving a vehicle belonging to a Charles Taylor. There is no evidence that the original L.E.A.D.S. check of the wrong temporary tag's number was other than an isolated mistake, nor was there any testimony to contradict the officer's explanation for the stop.
Based upon an analysis of the totality of the circumstances, we find that the foregoing facts, when taken collectively, support a reasonable and articulable suspicion of criminal activity which justified the stop of Keilback's vehicle.[1] State v. Kaszaz (Sept. 20, 1995), Medina App. No. 2413-M, 1995 Ohio App. LEXIS 4150, at *9, unreported; see, also,State v. Lambert (Mar. 24, 1994), Lawrence App. No. 93 CA 28, unreported. The officer testified that he learned about Keilback's suspended driver's license before he discovered (1) that the wrong temporary tag's number had been originally checked by the dispatcher, and (2) that the temporary tag on Keilback's vehicle was in fact valid. Accordingly, at the time he discovered that Keilback was driving under suspension, the officer "was still operating within the scope of a justified stop because no intervening event had yet alerted him that his reason for the initial stop was invalid." Kaszaz, Medina App. No. 2413-M, 1995 Ohio App. LEXIS 4150, at *9, unreported; see, also,Tallmadge v. McCoy (1994), 96 Ohio App.3d 604.
In light of the foregoing, we find that the trial court erred by granting Keilback's motion to suppress evidence. The state's sole assignment of error is well-taken and sustained. The decision of the trial court is reversed and the matter is remanded for further proceedings according to law and consistent with this opinion.
VALEN and POWELL, JJ., concur.
[1] We are mindful of State v. Goodrich (1996), 114 Ohio App.3d 645, which Keilback cites for the proposition that "when an investigative stop is made [up]on reliance * * * [of] a radio dispatch, the validity of the stop turns on whether the officer [issuing the dispatch] had information supporting a reasonable suspicion that the driver was engaging in criminal activity." Goodrich, however, involved a dispatch which was itself based upon hearsay and informant information. In the case at bar, the dispatch was based upon information from the stopping officer himself. We therefore find that Goodrich is factually very different and that its holding and reasoning do not apply to the case at bar.