JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Michael Cook, appeals from the judgment of the Cleveland Heights Municipal Court, which found him guilty of driving under the influence of alcohol (OMVI). He now appeals seeking reversal of the lower court's ruling denying suppression of his statements and blood test results.
{¶ 2} The instant matter stems from a one-vehicle accident which occurred on the morning of February 25, 2001 at approximately 1:19 a.m. in the city of Cleveland Heights, Ohio. A review of the record reveals that Cook crashed his vehicle into a wall on a tree lawn at 2612 Fairmont Boulevard. Witnesses to the accident notified the police, and officers soon arrived on the scene. Upon arrival, the officers found Cook on foot approximately one block from the accident scene, carrying his shoes. Testimony from the numerous suppression hearings revealed that the police found Cook with numerous facial cuts and a severe limp. Cook told the police officers that another vehicle had cut him off causing the accident and that he had been drinking that night prior to the accident. The officers testified that, although Cook smelled of alcohol, rather than instituting any type of field sobriety tests, the officers determined that his health and safety were of utmost concern, so an ambulance was summoned to transport him to the hospital.
{¶ 3} At the hospital, the triage nurse, Don Parsons, administered medical aid to Cook. Parsons testified that he was aware that the accident involved alcohol. He further testified that the emergency room physician determined blood work was necessary for diagnosis and, prior to drawing Cook's blood, a police officer requested that a blood sample also be drawn for use by the authorities in order to test for blood alcohol level. Parsons testified that he obtained Cook's consent, and the blood was drawn at 2:10 a.m. At 2:20 a.m., Cook was notified that he was being placed under arrest for driving under the influence of alcohol.
{¶ 4} The blood sample that was drawn for the authorities was taken to the Cuyahoga County Coroner's Office for testing, which later revealed that Cook's blood alcohol level was .143 at the time of the accident. Cook was formally indicted and, after numerous suppression hearings, he pleaded no contest to driving under the influence of alcohol, and the lower court found him guilty of the charge.
{¶ 5} For the following reasons, this appeal is well taken, and the judgment of the trial court is hereby reversed and the case remanded.
{¶ 6} The appellant presents three assignments of error for this court's review, as follows:
 {¶ 7} I. THE TRIAL COURT ERRED IN FAILING TO FIND THAT DEFENDANT WAS UNDER ARREST AT THE SCENE OF THE ACCIDENT AND IN FAILING TO SUPPRESS STATEMENTS OF THE DEFENDANT MADE BEFORE HE WAS ADVISED OF HIS MIRANDA RIGHTS.
 {¶ 8} II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS RESULTS OF BLOOD ALCOHOL TESTING WHEN THE POLICE PROCEDURE IN ADMINISTERING SAID TESTING WAS IMPROPER AND NOT IN ACCORDANCE WITH STATUTE.
 {¶ 9} III. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE BLOOD ALCOHOL TEST RESULTS AS THE TESTING LABORATORY DID NOT OBSERVE PROPER PROTOCOL FOR ENSURING CHAIN OF CUSTODY.
{¶ 10} The appellant first argues that he was under de facto arrest while he waited for the ambulance to arrive; therefore, any statements which he made to the police officers should be suppressed because he did not receive the necessary Miranda warnings. He argues that the police on the scene had made the decision to arrest him prior to the blood work being drawn, and, as such, he was entitled to have been informed that he was under arrest and read his Miranda rights.
{¶ 11} In Berkemer v. McCarty (1984), 468 U.S. 420,82 L.Ed.2d 317, at paragraph 2 of the syllabus, the United States Supreme Court stated:
 {¶ 12} The roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for the purposes of the Miranda rule. * * * Although the arresting officer apparently decided as soon as respondent stepped out of his car that he would be taken into custody and charged with a traffic offense, the officer never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. Since respondent was not taken into custody for the purposes of Miranda until he was formally arrested, his statements made prior to that point were admissible against him.
{¶ 13} As in Berkemer, the officer's intention prior to placing the appellant under arrest has no bearing on whether the appellant was in custody. The record reflects that the appellant willingly accepted the treatment of the emergency squad and the hospital staff. Moreover, the appellant voluntarily consented to the hospital staff drawing his blood for testing. At the time of formal arrest, the appellant was Mirandized by the arresting officers; therefore, the statements made prior to that time are admissible against the appellant.
{¶ 14} In his second assignment of error, the appellant contends that the blood alcohol test was not performed in strict accordance with R.C. 4511.191, and must be suppressed. This court finds the appellant's second assignment to have merit.
{¶ 15} In State v. Lloyd (1998), 126 Ohio App.3d 95, the court stated:
 {¶ 16} Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996), 116 Ohio App.3d 286, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, * * * This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521.
 However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.
{¶ 17} R.C. 4511.191 provides:
 {¶ 18} (A) Any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking * * * shall be deemed to have given consent to a chemical test or tests of the person's blood * * * for the purposes of determining the alcohol * * * content of the person's blood * * * if arrested for operating a vehicle while under the influence of alcohol * * * or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. (Emphasis added).
{¶ 19} When a suspect voluntarily consents to submit to a blood test to determine the alcohol content in his blood prior to arrest, this constitutes actual consent and obviates the need to establish the prerequisites of R.C. 4511.191.
{¶ 20} The record is uncontroverted that the appellant was formally placed under arrest at 2:20 a.m., but the appellant's blood was drawn at 2:10 a.m. As such, and in accordance with R.C. 4511.191, in order for the results of the blood alcohol test to be admissible, the appellant must have given actual consent to the test since the arrest occurred after the blood was drawn.
{¶ 21} The lower court's journal entry, dated August 1, 2001, relies on the contention that the appellant gave actual consent to the nurse for the blood draw pre-arrest; therefore, compliance with the implied consent procedure is obviated. This holding is without merit. The United States Supreme Court, in Schneckloth v. Bustamonte (1973),412 U.S. 218, 248-249, held:
 {¶ 22} * * * when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and if the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent.
{¶ 23} In Fairfield v. Regner (1985), 23 Ohio App.3d 79, the Twelfth Appellate District, Butler County, confronted a factually similar situation. In Regner, the defendant was told that she was not under arrest or charged with an offense, but that the police officer wanted to take a sample of her blood for analysis to determine its alcohol content. The police officer advised her that she could refuse to allow a blood sample to be drawn and that her consent must be voluntary. The appellant in Regner replied, "You can do anything you want." In ruling, the Twelfth District stated:
 {¶ 24} * * *, we hold that a suspect, upon request of a police officer, may voluntarily consent to submit to a blood test to determine the concentration of alcohol in his or her blood. Such consent constitutes actual consent and relieves the prosecution of establishing the prerequisites of implied consent contained in R.C. 4511.191, to wit: probable cause, arrest and advice of the consequences of a refusal to submit to a test." Id. at 85. (Emphasis added).
{¶ 25} As stated in Regner, "upon request of a police officer" a suspect may voluntarily consent to submit to a blood test. In the case at hand, testimony revealed that Parsons, the triage nurse, drew appellant's blood as a result of the physician's order for lab work to be completed. Parsons testified that prior to his drawing the appellant's blood, an officer requested that an additional sample be drawn for blood alcohol testing. Id. at Tr. Pg. 5. Parsons testified that the appellant was conscious and alert at the time of the blood draw and that the appellant was notified that the blood was being drawn for testing, which included alcohol content. Parsons testified that he, not the police officer, obtained the appellant's consent to draw blood.
{¶ 26} In light of the above and the holding in Regner, this court can only conclude that the blood sample for the blood alcohol test was not voluntarily obtained from the appellant. First, Regner requires that consent be obtained by a police officer. Consent in the case at hand was obtained by the triage nurse. This court is aware that circumstances exist were it is necessary to obtain blood without the suspect's consent, but this instant matter does not square with any of the exceptions. (See State v. Taylor (1982), 2 Ohio App.3d 79, where a trial court's denial of a motion to suppress for failure to comply with R.C.4511.191 was upheld where officer asked hospital to draw blood for alcohol test from an unconscious suspect to prevent spoilation of evidence.) The appellant consented to the triage nurse obtaining blood for testing, which included alcohol content. Consent from the appellant was not obtained by the police officer, rather, the police officer requested the triage nurse to obtain an additional sample. Clearly, the officer should have obtained the consent directly from the appellant, not through the triage nurse. There exists no plausible reason that would have prohibited the police officer from directly requesting the appellant's consent.
{¶ 27} In no way does this court infer that the police officer attempted to circumvent the legal standards by having the triage nurse obtain consent; nevertheless, the appellant, in giving consent to the nurse, could have easily concluded that the blood work was necessary for medical treatment, not criminal prosecution. If the appellant had been properly advised that the blood sample would be used to prosecute him, it is arguable whether he would have voluntarily consented to the blood being drawn.
{¶ 28} Therefore, in accordance with Regner, this court finds that consent was not voluntarily obtained. As such, all evidence obtained as a result of the blood test is inadmissible.
{¶ 29} Pursuant to our holding in appellant's assignment of error number two, the appellant's third and final assignment of error is hereby rendered moot. App.R. 12(A).
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND ANNE L. KILBANE, J., CONCUR.