This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Robert Wiles, appeals from the decision of the Summit County Court of Common Pleas. We affirm.
{¶ 2} Mr. Wiles was indicted on one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(2), one count of possession of marijuana, in violation of R.C. 2925.11(A), and one count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). The indictment related to evidence allegedly found at Mr. Wiles' house during a search conducted by the police. Mr. Wiles was arraigned on all counts and filed a motion to suppress the evidence recovered during the search of the house. A hearing on the motion to suppress was held on March 21, 2002, testimony was presented, and, on April 11, 2002, the trial court denied the motion. Thereafter, on April 22, 2002, Mr. Wiles entered a plea of no contest to the charges of trafficking in marijuana and possession of marijuana. The charge of illegal use or possession of drug paraphernalia was dismissed. The trial court proceeded to sentence Mr. Wiles. This appeal followed.
{¶ 3} Mr. Wiles raises one assignment of error:
{¶ 4} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE APPELLANT WAS COERCED INTO CONSENTING TO THE SEARCH OF HIS RESIDENCE WHICH LED TO THE SEIZURE OF ILLEGAL DRUGS THAT WERE ALLEGEDLY PRESENT IN THE APPELLANT'S HOME."
{¶ 5} In his assignment of error, Mr. Wiles asserts that the trial court erred in denying his motion to suppress. We disagree.
{¶ 6} An appellate court's standard of review with respect to a motion to suppress is de novo. State v. Nichols, 9th Dist. No. 01CA0037, 2002-Ohio-1993, at ¶ 4. The reviewing court need only determine whether the trial court's findings are supported by competent, credible evidence. State v. Winard (1996), 116 Ohio App.3d 286, 288, citingTallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996),112 Ohio App.3d 521, 548, citing State v. Venham (1994),96 Ohio App.3d 649, 653.
{¶ 7} The appellate court's review of the facts looks only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. State v. Bing (1999), 134 Ohio App.3d 444, 448, quoting Ornelas v. United States (1996), 517 U.S. 690, 699,134 L.Ed.2d 911. However, once accepting those facts as true, the appellate court must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Guysinger (1993), 86 Ohio App.3d 592, 594.
{¶ 8} Searches and seizures conducted without a warrant from a judge or magistrate are per se unreasonable unless they come within one of the "few specifically established and well delineated exceptions."Minnesota v. Dickerson (1993), 508 U.S. 366, 372, 124 L.Ed.2d 334
(internal quotation marks omitted). A warrantless search can be justified if it is conducted pursuant to voluntary consent. State v. Sneed (1992),63 Ohio St.3d 3, 7. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "`clear and positive' evidence that the consent was `freely and voluntarily given.'" State v. Posey (1988),40 Ohio St.3d 420, 427, quoting Bumper v. North Carolina (1968),391 U.S. 543, 548, 20 L.Ed.2d 797.
{¶ 9} In the March 21, 2002 hearing on the motion to suppress, Detective Donnie Williams of the Akron Police Department testified that, on January 30, 2002, he and several other police officers went to 7 Neal Court in Akron, Ohio, Summit County based upon information that a felony suspect was hiding in the house. Detective Williams stated that he and other officers approached the front door, knocked on the door, and talked with Carol Wiles, Mr. Wiles' wife. He stated that he asked Ms. Wiles whether the suspect or any other males were in the house. Ms. Wiles responded that there were not any males in the house. Detective Williams testified that Ms. Wiles kept looking over her shoulder so he asked her if he and the other officers could talk to whomever was in the house. He testified that, at that point, Ms. Wiles told the officers "yes" and opened the door to let them enter the house.
{¶ 10} Detective Williams stated that, when he entered the house, he saw Mr. Wiles walking from the living room to the kitchen. Detective Williams explained to Mr. Wiles that he was looking for the suspect. Detective Williams testified that Mr. Wiles denied that the suspect was in the house and told the officers "[g]o ahead, look around, there's nobody else in the house." Detective Williams also testified that none of the officers searched any part of the house until Mr. Wiles gave them permission. He stated that two officers went into the basement where the suspect was located and, further, that marijuana was seen in plain view on the countertop in the kitchen. He also stated that another officer entered the house at that point and held a discussion with Mr. Wiles regarding the consent to search form. Detective Williams testified that once Mr. Wiles signed a consent to search form, he directed the officers to places where guns were hidden throughout the house.
{¶ 11} Sergeant Jason Malick of the Akron Police Department testified that he remained outside the house while other officers went up to the door and into the house. He explained that he did not enter the house until after the suspect had been located in the basement. Sergeant Malick stated that, once he was in the house, another officer informed him that there had been marijuana in plain view in the kitchen. At that point, he decided to ask Mr. Wiles, a relative of the suspect and resident of the house, to sign a consent to search form so that the remainder of the house could be searched.
{¶ 12} Sergeant Malick testified that he had a discussion with regard to the consent form, explaining that, in the alternative, the police could get a search warrant. He stated that the conversation never turned threatening and that he never made threats with regard to the children in the house. Specifically, he stated that the only time that the children were mentioned was when Ms. Wiles tried to give him a difficult time for being in the house, at which point he told her that he could have tried to arrest her and that, if both parents were arrested, the children could have been taken to Childrens' Services Board. Sergeant Malick testified that, with regard to Ms. Wiles being upset, he attempted to make it clear to Ms. Wiles that he was trying to "cut her a break." Further, he stated that any conversation regarding the children was unrelated to the search of the house.
{¶ 13} Officer Alan Jones of the Akron Police Department testified that he talked with Mr. Wiles regarding the marijuana. Officer Jones testified that, at first, Mr. Wiles stated that there was nothing else in the house. Officer Jones explained that he informed Mr. Wiles that the police could obtain a search warrant and, also, that, if anything else was found in the house, it could result in both Mr. Wiles and his wife being arrested, as well as the children being removed from the home. Mr. Wiles asked Officer Jones if they could talk, whereupon Mr. Wiles informed him that there was more marijuana in the house. Mr. Wiles also indicted to Officer Jones that he would prefer that his children stay with someone such as a relative rather than with Childrens' Services. Officer Jones testified that he explained to Mr. Wiles that it was both possible and probable that the children could stay with his wife.
{¶ 14} Officer Jones testified that he asked Mr. Wiles if he would mind signing the consent to search form and that Mr. Wiles indicated that he would not have a problem with signing such a form. Officer Jones stated that he read the form to Mr. Wiles and that Mr. Wiles signed the form. When he signed the form, Mr. Wiles told Officer Jones that he wanted Officer Jones' promise that his children would not go with Childrens' Services. Again, Officer Jones told him that his children would probably not go with Childrens' Services. Thereafter, Mr. Wiles directed the officers to contraband hidden in the house. Officer Jones testified that he did not believe that Mr. Wiles had thought that his children would be sent to Childrens' Services if he did not sign the consent form. Rather, he said that any conversation regarding Mr. Wiles' children began prior to and was separate from the consent form.
{¶ 15} At the hearing, Ms. Wiles testified that the police officers neither asked her permission to enter the house nor gave her any indication as to why they were there. She also testified that she told Sergeant Malick that she did not want the police officers in her home. Mr. Wiles testified that he never told the police officers that they could search around his house. He stated that, once the police officers found the suspect and some marijuana, they indicated to him that they wanted to search his entire residence but he told them that they could not search the house. At that point, according to Mr. Wiles, the officers told him that, if he did not sign the consent to search form, his children would be sent to Childrens' Services. Mr. Wiles testified that he pulled Officer Jones aside and informed him that he would sign the form as long as his children and wife were not sent anywhere.
{¶ 16} As previously noted, in a motion to suppress hearing, the credibility of witnesses and the weight to be given to the witnesses testimony are matters for a trial court to resolve. See Hopfer,112 Ohio App.3d at 548; see, also, State v. Fanning (1982), 1 Ohio St.3d 19, 20. In this case, the testimony of the police officers is not inconsistent as alleged by Mr. Wiles but, rather, each officer's statement corroborates the testimony of the other officers. The testimony also does not, as alleged by Mr. Wiles, indicate that Mr. Wiles' residence was searched prior to consent being given. Moreover, if believed, the officers' testimony is sufficient to establish that Mr. and Ms. Wiles were not threatened or coerced but, rather, voluntarily consented to a search of their home. The conflict in the evidence created by the testimony of Mr. and Ms. Wiles was a matter for the trial court to resolve and it did so in favor of the State. See, generally, State v. King, 2nd Dist. No. 18463, 2002-Ohio-2929, ¶ 18. This Court declines to say that the trial court erred in finding that there was voluntary consent to search the house.
{¶ 17} Mr. Wiles' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, J. and CARR, J. CONCUR.