JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Joshua Crosby, appeals the decision of the trial court to deny his motion to suppress. After a thorough review of the arguments and for the reasons set forth below, we affirm.
 {¶ 2} On January 11, 2006, appellant was indicted on one count of carrying a concealed weapon, in violation of R.C. 2923.12, a felony in the third degree, and one count of possession of a firearm while under a disability, in violation of R.C. 2923.13, a felony in the fourth degree. On April 13, 2006, he filed a motion to suppress, arguing that the police did not have probable cause or reasonable suspicion to search him. On August 2, 2006, a hearing was held on his motion to suppress and, at the conclusion of the hearing, the trial court denied the motion. As a result, appellant entered a plea of no contest on both counts of the indictment and was sentenced to one year for carrying a concealed weapon and three years for having a weapon while under a disability. The trial court ordered that the sentences be served concurrently, for an aggregate term of three years incarceration.
 {¶ 3} The incident that gave rise to the charges against appellant occurred on January 10, 2006. On that day, Detective John Dlugolinski and other members of the Cleveland Police Department were working with a confidential reliable informant ("CRI") to facilitate a narcotics buy in the East 79th Street area of Cleveland. The CRI instructed the detectives that he was going to drive to East 79th Street and Carnegie Avenue, where he would meet a middleman who would then take him to a *Page 4 
second location to purchase heroin. After police searched the CRI and provided him with prerecorded buy money, he drove to East 79th and Carnegie and met the middleman, who was later identified as Jeff Daniels.
 {¶ 4} Cleveland police detectives followed the CRI in an undercover vehicle in order to document the entire transaction. When the CRI met Daniels, the two agreed to drive together to East 123rd
Street and Lencrave to purchase the heroin. Police confirmed this plan through audio surveillance. The target location was a small shopping center that included a convenience store and a barber shop.
 {¶ 5} When the CRI and Daniels arrived at the target location, Daniels got out of the car and walked into the convenience store alone. An undercover informant followed Daniels into the store so the details of the transaction could be relayed to police. Once inside, Daniels spoke with a woman by the name of Shakeila Blackman, who agreed to sell the CRI one of the two ounces of heroin in her possession. After speaking with Blackman, Daniels returned to the CRI, took the buy money from him, and went back inside the store to complete the transaction. Daniels then returned to the CRI's vehicle, and the two drove off. Shortly thereafter, they were stopped by the police, and one ounce of heroin was found in Daniel's possession.
 {¶ 6} At trial, Detective Dlugolinski testified that, although the operation utilizing the CRI had been completed, he maintained surveillance on the store. Several minutes after the transaction took place, Dlugolinski observed Blackman as *Page 5 
she left the store with a man and young child and walked into the barber shop next door. Knowing that there was a good chance that Blackman would attempt to sell the second ounce of heroin or switch the buy money, the police determined that she needed to be apprehended. Dlugolinski testified that as he and other detectives entered the shop to perform the take down, he saw Blackman and appellant talking in the back area of the barber shop. Dlugolinski immediately detained Blackman and moved her to the side so a female detective could search her. He then detained and searched the man who was seen leaving the barber shop with Blackman and found a large amount of hypodermic needles in his possession.
 {¶ 7} At trial, Detective Edwin Cuadra testified that he was working as a takedown officer on the day of the operation. As the transaction between the CRI and Blackman took place, Cuadra received a play-by-play of the events via radio. He also received a description of a short African-American male in dark clothing who kept walking in and out of the convenience store during the transaction. After hearing this information, Cuadra concluded that the man was a lookout. Cuadra testified that when he received the radio transmission authorizing the takedown, he entered the barber shop with other detectives and observed appellant engaged in conversation with Blackman. Cuadra stated that, upon seeing the police, appellant immediately stepped back from Blackman and his facial expression changed drastically, appearing to be startled. Because of appellant's suspicious behavior and the fact that he matched the description of the lookout, Cuadra concluded that *Page 6 
appellant was involved in some sort of criminal activity with Blackman. At trial, Cuadra testified that, on the basis of his knowledge and experience as a detective, he was aware that narcotics arrests have a greater likelihood of involving firearms. Taking this into consideration, Cuadra apprehended appellant and conducted a pat-down search of his outer clothing, which uncovered a loaded .38 caliber revolver.
 {¶ 8} It is important to note that the police exercised careful discretion when searching individuals inside of the barbershop. The take-down unit did not search the patrons, but rather limited their search to those individuals they believed were involved in criminal activity.
 {¶ 9} Appellant brings this appeal asserting the following three assignments of error for our review.
 {¶ 10} "I. The state failed to demonstrate that officers possessed reasonable suspicion that Joshua Crosby was engaged in criminal activity. Therefore, the trial court erred in denying appellant's motion to suppress.
 {¶ 11} "II. The state failed to show that officers possessed reasonable suspicion that appellant Crosby was armed and dangerous. Therefore, the trial court erred in finding that officers were justified in performing a pat-down search.
 {¶ 12} "III. The trial court erred in applying a standard of reasonable suspicion when the proper legal standard for the search in question was probable cause."
 {¶ 13} Although appellant asserts three assignments of error, at the crux of his appeal is his argument that the trial court erred when it denied his motion to *Page 7 
suppress. More specifically, he asserts that the evidence presented at trial failed to establish that the police had a reasonable, articulable suspicion that he was involved in criminal activity. In addition, appellant contends that the trial court erred when it applied the reasonable suspicion standard in evaluating his motion to suppress when the applicable legal standard is probable cause.
 {¶ 14} Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996), 116 Ohio App.3d 286, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 645 N.E.2d 802. This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996),112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.
 {¶ 15} We do not agree with appellant's argument that the trial court erred when it denied his motion to suppress. Ohio law is well settled that police may stop a suspect and conduct a pat-down search of the outer clothing when they have a reasonable, articulable suspicion that criminal activity is afoot. In the present case, it is clear that Cuadra had reasonable suspicion to search appellant. When police entered the barbershop, appellant was engaged in direct conversation with *Page 8 
Blackman, who was their target. Upon seeing the police, he immediately stepped away from Blackman and exhibited a startled facial expression. In addition, he matched the description of the lookout seen walking in and out of the convenience store as the transaction was taking place. After observing his actions, Cuadra reasonably concluded that appellant may be involved in some sort of criminal activity and searched him to ensure the safety of everyone involved.
 {¶ 16} When denying appellant's motion to suppress, the trial court made the following findings on the record:
 {¶ 17} "Mr. Owen, I'm very surprised that you filed this suppression motion because I don't even think this is a close call. Police officers, first of all, are not expected to abandon common sense and whether or not they even had a radio call about a short, black male going in and out, I think they had more than sufficient right to search him.
 {¶ 18} "He is in a barber shop for no apparent reason. He is talking to someone who has been identified to them as a drug dealer. She has no apparent purpose there either.
 {¶ 19} "There is [sic] other people in the room. Besides their own safety, which I think is clear, they had the responsibility for the safety of everybody there.
 {¶ 20} "I think this was absolutely, without any question, a justified search. I am really surprised that you don't see that. I mean, you are a lawyer and you can do *Page 9 
that, but I think this is probably one of the clearest that I have ever seen of a pat-down."
 {¶ 21} It is clear that the trial court's decision to deny appellant's motion to suppress was supported by competent, credible evidence. Accordingly, appellant's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and MARY EILEEN KILBANE, J., CONCUR. *Page 1