{¶ 1} Appellant, Akanbi Nia, appeals his convictions for aggravated murder and attempted aggravated murder. After a thorough review of the arguments and for the reasons set forth below, we affirm appellant's convictions, but vacate his sentence and remand for resentencing.
 {¶ 2} On September 16, 2004, appellant was indicted on multiple counts, including: two counts of aggravated murder, in violation of R.C.2903.01, with felony murder specifications and mass murder specifications; two counts of aggravated robbery, in violation of R.C.2911.01; two counts of attempted aggravated murder, in violation of R.C.2923.02 and 2903.01; one count of having a weapon while under a disability, in violation of R.C. 2923.13; one count of drug possession, in violation of R.C. 2925.11; and one count of drug trafficking, in violation of R.C. 2925.03. All counts also included firearm specifications, in violation of R.C. 2941.145 and 2941.144. Although appellant's case was initially a capital murder case, the mass murder specification was later dismissed by the state.
 {¶ 3} On September 27, 2004, appellant was arraigned and entered a plea of not guilty. On March 3, 2005, he filed a motion to dismiss for lack of a speedy trial and requested a hearing on the matter; however, on June 6, 2005, he filed a waiver of his speedy trial rights. On June 24, 2005, appellant filed a motion to suppress the statements he had made to the police with respect to the charges against him. On September 6, 2005, a hearing was held on his motion to suppress. After the state *Page 4 
and defense had an opportunity to present their arguments, the trial court denied the motion to suppress.
 {¶ 4} On October 6, 2005, a jury trial commenced. After the state rested its case, appellant made a Crim.R. 29 motion for acquittal. The trial court denied the motion with the exception of count 3, a charge of aggravated robbery, which was dismissed. After deliberations, the jury returned a verdict finding appellant guilty of one count of aggravated murder without firearm specifications and felony murder specifications, not guilty of aggravated robbery, and guilty of one count of attempted aggravated murder without firearm specifications. The remaining charges of drug trafficking, drug possession, and having a weapon while under a disability were nolled.
 {¶ 5} On October 27, 2005, appellant was sentenced to 20 years to life in prison for aggravated murder and 8 years for attempted aggravated murder. The trial court ordered that the sentences be served consecutively, for an aggregate term of 28 years to life imprisonment. On December 16, 2005, appellant filed his notice of appeal.
 {¶ 6} The incident that gave rise to the charges against appellant occurred on August 26, 2004 and involved two victims, Marique Farr and Jessica Weakley. Marique was well known in the vicinity of Superior Road in East Cleveland and Cleveland Heights for dealing drugs. On the morning of the incident, Marique's wife rented a car for him, which he intended to drive to Fort Wayne, Indiana later that day *Page 5 
to purchase a large quantity of narcotics. Marique first drove the rental car to Dwight Whitehead's house in Cleveland. He picked up Whitehead and dropped him off at the Euclid Shopping Center. He then headed to Jessica Weakley's home in Cleveland Heights, arriving there around noon. Jessica and Marique were friends and would frequently spend time together.
 {¶ 7} While Marique was with Jessica, he called appellant. He and appellant were friends and had known each other for several years. Appellant owed Marique $100, and the two agreed to meet later at appellant's home on Coventry Road so appellant could give Marique the money before he traveled to Fort Wayne. Appellant asked Marique to pick up his friend, Johnny Walker, on the way to his house. Walker, who went by the street name of "Cash," was a close friend of appellant's, and he and Marique were acquainted with each other.
 {¶ 8} Shortly before 4:00 p.m., Marique picked up Walker on the way to appellant's house. When they arrived, appellant came out of his house and asked Walker to get out of the car to talk with him. Walker exited the car, and he and appellant spoke briefly and then went into the house, while Marique and Jessica waited in the car. Appellant and Walker returned to the car and both got in, with Walker sitting directly behind Jessica and appellant sitting behind Marique.
 {¶ 9} Appellant gave Marique the money he owed him and asked Marique to drive him and Walker to his aunt's apartment on Superior and Coventry to pick up his car. As they arrived at the apartment building at around 4:00 p.m., Marique *Page 6 
stopped the car in the back parking lot and began to make a call on his cellular phone. It was at that moment that Marique saw Walker scoot towards appellant and also saw a black object in Walker's hand. He then heard a series of gunshots and heard Jessica scream. Both Marique and Jessica were shot in the back of the head. As the shooting occurred, several witnesses heard the gunshots and saw two individuals moving in the back of Marique's car; however, none of the witnesses were able to directly view the faces of the individuals.
 {¶ 10} East Cleveland Police Officer Joseph Lucarelli was the first officer to arrive at the scene. As he approached Marique's car, he saw that Jessica had suffered a gunshot wound to the back of the head and was unresponsive. He observed that Marique had also been shot in the head, but he appeared to be breathing. EMS arrived at the scene at around 4:30 p.m., and Marique was transported for treatment. Jessica was later pronounced dead.
 {¶ 11} After undergoing surgery, Marique was able to positively identify Walker as the individual who shot him and recall events leading up to the shooting. As a result of the gunshot wound to his head, Marique is now blind, speaks very slowly, is wheelchair-bound, and does not have the use of his left arm.
 {¶ 12} Appellant's and Walker's accounts of the events differ greatly from that of Marique. East Cleveland police detective Joseph Marche testified that he spoke with appellant shortly after the incident. Appellant stated that he and Marique were friends, and they did see each other on the day of the shootings. Det. Marche *Page 7 
testified that appellant stated that while driving around in the Superior Road area of East Cleveland, he saw Marique riding around with Jessica, but he did not have any conversation with them.
 {¶ 13} Det. Marche also had an opportunity to speak with Walker, who told him that he and appellant met Marique on the day of the shooting so appellant could give Marique the money that he owed him. Walker stated that appellant gave Marique the money, they talked for a short period of time, then he and appellant went on their way. Walker further stated that later on that evening, he and appellant were informed that Marique and Jessica had been shot.
 {¶ 14} Appellant brings this appeal asserting five assignments of error for our review.
 {¶ 15} "I. The trial court erred by denying appellant's motion to suppress when there is no evidence that Miranda warnings were given prior to the oral statement and later statements were not made voluntarily, which violated appellant's federal due process rights under the U.S. Constitution and due process rights under the Ohio Constitution."
 {¶ 16} Appellant first argues that the trial court erred when it denied his motion to suppress. More specifically, he asserts that he was not given Miranda warnings prior to the oral statements he made to police, thus, his statement should be suppressed. We do not agree. *Page 8 
 {¶ 17} Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996), 116 Ohio App.3d 286, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 645 N.E.2d 802. This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer ( 1996),112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.
 {¶ 18} When appellant was first interviewed by the police on September 8, 2004, he was not viewed as a suspect in the crime, but rather an individual who may have helpful information. Det. Marche testified at trial that during that first interview, appellant was not placed under arrest, was at all times free to leave, and did in fact leave at the conclusion of the interview. The September 8th interview was very brief, and appellant made statements freely, stating that he did see Marique and Jessica on the day of the shooting, but did not speak with them or have any other interaction with them.
 {¶ 19} During the course of the interview, appellant had given his cellular phone number to the police so they could contact him for additional information. That phone number was compared to Marique's phone records, which they had *Page 9 
investigated prior to the interview. When appellant's phone number matched, the police determined that appellant was being less than forthright with them because the phone records indicated he had talked with Marique several times on the day of the shooting. At that time, police determined that appellant may be a potential suspect and read him his Miranda rights before they continued with the interview. After reading him his rights, police asked him whether he wanted to continue speaking with them about the incident, and he indicated that he did.
 {¶ 20} When appellant was advised that the police had a copy of his phone records from the day of the shooting, he retracted his previous statement and stated that he had interacted with Marique and Jessica on August 26th. He stated that he owed Marique $100, and the cell phone conversation that occurred between them was to arrange a meeting so he could give Marique the money. He further stated that he met with Marique on the afternoon of the shooting, but could not remember the exact time of the meeting. After giving this statement to the police, the interview concluded and appellant left the police station.
 {¶ 21} At trial, Det. Marche stated that the next interview of appellant occurred the following day, on September 9, 2004. Appellant was contacted and requested to return to the police station to answer some follow-up questions. After he arrived at the police station, appellant was again read his Miranda rights and indicated that he did want to speak with the police. As the interview progressed, police informed appellant that they thought it was strange that Marique would attempt to collect the *Page 10 
$100 from him on a day when he was planning to drive to Indiana. At this point, appellant became irate and invoked his right to remain silent, at which time the interview concluded, and appellant was placed under arrest and placed in a cell.
 {¶ 22} While appellant waited in jail, he passed a note to a trustee inmate. The note instructed the trustee to call an individual by the name of "Jay" and tell him to search under the seat of appellant's Malibu for an item. The note also instructed the trustee to tell Jay to call Walker and inform him that someone was giving the police false information. Although the note had been passed to the trustee, it was intercepted by a prison guard. As a result, the police searched appellant's vehicle and found 70 grams of cocaine under the driver's seat.
 {¶ 23} On September 10, 2004, as a result of finding the note appellant had passed to the trustee and the cocaine in his car, appellant was again summoned to the detective bureau. He was given his Miranda rights, he indicated that he did not want to talk with the police, and he was returned to his cell. Later that day, officers again had appellant brought to the detective bureau and asked him if he wanted to answer questions regarding the investigation. Appellant indicated that he was willing to speak with them and was questioned.
 {¶ 24} On September 14, 2004, appellant initiated contact with the police and provided them with a written statement regarding the investigation. Before writing the statement, appellant was provided with and signed a written Miranda rights waiver form. *Page 11 
 {¶ 25} It is clear from the testimony of Det. Marche that appellant had been informed of his Miranda rights at all relevant times before making statements to the police. All of his statements were voluntary, his movement was never restricted, and he was always aware that he was under no obligation to make any statements to the police. The only time appellant made a statement and had not been informed of his rights was during his first interview with the police. At that time, he was not yet a suspect, but when the police felt that his statements were contradictory, raising concern in their eyes, he was read his Miranda rights and had to indicate that he was willing to speak with the police before the interview continued.
 {¶ 26} Det. Marche provided a clear time line of statements made by appellant, and in each, he highlighted where appellant was given proper warnings regarding his Miranda rights. From the caliber of the detailed evidence provided at trial, it is clear that the trial court's decision was supported by competent, credible evidence. The trial court did not err when it denied appellant's motion to suppress. Accordingly, his first assignment of error is overruled.
 {¶ 27} "II. Appellant's right to confrontation was violated when the prosecution introduced testimonial hearsay statements from an alleged accomplice secured during police interrogation that implicated appellant in the offense."
 {¶ 28} Appellant next argues that he was denied his constitutional right to confrontation of a witness against him when the trial court admitted hearsay testimony form his co-defendant, Johnny Walker. Appellant asserts that Walker's *Page 12 
testimony should have been barred from admission because the prosecution failed to make a showing that Walker was unavailable to testify at trial or had been subject to cross-examination in any proceedings relating to appellant's case, as mandated by the United States Supreme Court inCrawford v. Washington (2004), 541 U.S. 36. Appellant contends that the trial court's actions prejudiced him and tainted the outcome of his trial, warranting reversal.
 {¶ 29} The United States Supreme Court's holding in Crawford addressed the issue of the admissibility of statements made by an absent witness. The Court held:
 {¶ 30} "Our cases have thus remained faithful to the Framers understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59.
 {¶ 31} Although the ruling in Crawford set forth the relevant factors for the admission of testimony from an absent witness, the Sixth Circuit Court of Appeals, in U.S. v. Simpson (2004), 116 Fed.Appx. 736, distinguished the United States Supreme Court's ruling inCrawford with respect to statements made by an absent co-defendant. The holding in Simpson stated in pertinent part:
 {¶ 32} "When, as here, a co-defendant's statement is not facially incriminating of defendant and could only have been incriminating when linked with other evidence, the redacted statement does not poseBruton problems. Nor does Crawford v. Washington, change our analysis. In Crawford, the Supreme Court *Page 13 
emphasized that `the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure and particularly its use of ex parte examinations as evidence against the accused.' The Court went on to note that `the text of the confrontation clause reflects this focus. It applies to witnesses against the accused' But here, because the statements exculpated [defendant] rather than incriminated him, they cannot be said to have been used against him nor to have prejudiced him."
 {¶ 33} Based upon the holdings in Crawford and Simpson, this court does not agree with appellant's argument that the trial court erred when it admitted testimony from his co-defendant Johnny Walker. Appellant is correct in his contention that Crawford requires that an absent witness must be unavailable to testify and must have been cross-examined by the defendant in order to have their statements submitted at trial. However, the Sixth Circuit's holding in Simpson provides that the statements of an absent co-defendant may be admitted without violation ofCrawford if the statements do not incriminate the defendant. In this case, the statements made by Walker exculpated, rather than incriminated, appellant. The following exchange between Walker and the police was admitted at appellant's trial:
 {¶ 34} "Q: What can you relate to me about the incident that took place at 1500 Luxor, which is located in the city of East Cleveland, county of Cuyahoga, state of Ohio, at about 4:53 p.m. on August 26, 2004? *Page 14 
 {¶ 35} "A: I woke up sometime in the early afternoon, I can't remember exactly what time it was. I left my house, got in my car and drove out to Superior Hill. I just drove around and I probably got something to eat, I really can't remember. At some point during the day I saw a gold colored vehicle on Bellmar and pulled over to see who it was because I didn't recognize the car and thought he was serving up there. When I pulled up to the driver side window, I noticed it was Mark Farr [Marique] and he had a female with him. I can't remember exactly what I said, but it was something like what's up. I pulled off and continued driving around. A few minutes after talking to Mark I saw my friend [Kombi/Appellant] and he got in my car. We drove around, hit some licks and then went and met Mark (Marique) on Superior somewhere. Kombi gave him the money he owed him and then we left. Sometime later that evening, we found out that Mark had been shot. I was probably a little everywhere that day, like I am every day. That's about all I can remember from that night."
 {¶ 36} It is clear that Walker's statement did not incriminate appellant. Walker told police that he and appellant did see Marique and Jessica on the day of the shooting, but that they only saw each other for a brief period of time and did not find out about the shooting until later that evening. Walker's statement was in no way incriminating to appellant, thus, under Simpson, it was properly admitted. *Page 15 
Accordingly, the trial court did not err when it admitted Walker's statement to the police, and appellant's second assignment of error is overruled.
 {¶ 37} Because appellant's third and fourth assignments of error are substantially interrelated, they are addressed together.
 {¶ 38} "III. The state failed to present sufficient evidence to sustain a conviction against appellant.
 {¶ 39} "IV. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 40} Appellant argues that the prosecution presented insufficient evidence at trial to support his convictions. He further contends that, because of the insufficient evidence offered by the prosecution, the jury's guilty verdict was against the manifest weight of the evidence.
 {¶ 41} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, citing Jackson v.Virginia (1979), 443 U.S. 307.
 {¶ 42} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), *Page 16 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259; Jackson v. Virginia (1979),443 U.S. 307.
 {¶ 43} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City ofCleveland (1948), 150 Ohio St. 303, 345.
 {¶ 44} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida, (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 752, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), *Page 17 20 Ohio App.3d 172, 485 N.E. 2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 45} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Martin at 720.
 {¶ 46} We find no merit in appellant's argument that his guilty verdict was not supported by sufficient evidence and was against the manifest weight of the evidence. Beyond the mountain of evidence that was presented at trial against appellant, Marique testified that Walker and appellant were responsible for the shooting. When Marique picked up Walker on the day of the shooting, appellant asked Walker to exit Marique's car so they could talk. The two talked briefly and then both entered Marique's car. At that time, appellant was fully aware that Marique was heading to Indiana to purchase narcotics and had over $26,000 in cash in his car. Marique drove appellant and Walker to a second location under the belief that he was dropping them off to pick up appellant's car. It was at that time that Jessica was killed and Marique was severely injured by gunshot wounds to their heads. After the shooting, Marique was able to positively identify Walker as the *Page 18 
gunman and implicate appellant as Walker's accomplice. The following exchange took place between Marique and the prosecution at trial:
 {¶ 47} "Q: All Right. Before the gunshot, where was Akanbi sitting and where was Johnny sitting?
 {¶ 48} "A: Johnny was sitting — like Johnny, at first he was sitting behind Jessica in the back seat. Then he started scooting over towards — he started scooting towards Akanbi, which Akanbi was sitting behind me in the back seat.
 {¶ 49} "Q: Scooting towards him?
 {¶ 50} "A: Yes, sliding over.
 {¶ 51} "Q: And you said you saw something in Johnny's hand. What did you see?
 {¶ 52} "A: A black object.
 {¶ 53} "Q: What was it?
 {¶ 54} "A: I believe it was a gun.
 {¶ 55} "Q: Are you sure?
 {¶ 56} "A: Yeah.
 {¶ 57} "Q: Who shot you?
 {¶ 58} "A: Johnny Walker."
 {¶ 59} It is clear from Marique's own testimony that appellant and Walker were the individuals responsible for his injuries and Jessica's death. In addition to *Page 19 
Marique's eyewitness account, appellant gave conflicting statements to the police regarding his actions on the day of the shooting and had even denied speaking with Marique, despite the fact that his cellular phone records showed otherwise.
 {¶ 60} Marique's eyewitness account, coupled with appellant's conflicting statements to the police and clear motive for theft, provided more than sufficient evidence to support his conviction for aggravated murder and attempted aggravated murder as an accomplice to Walker.
 {¶ 61} Similarly, when evaluating the evidence presented at trial, it is apparent that the jury's verdict was not against the manifest weight of the evidence. Accordingly, appellant's third and fourth assignments of error are overruled.
 {¶ 62} "V. The trial court erred by ordering appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record."
 {¶ 63} Appellant argues that the trial court erred when it imposed consecutive sentences. Specifically, he asserts that the trial court did not consider a concurrent sentence or make findings of fact supported by the record before imposing his sentence, thus the sentence should be overturned.
 {¶ 64} The Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, renders appellant's assignment of error without merit for the purposes of this appeal. In Foster, the Court found several sections of the revised code unconstitutional, including R.C.2929.14(B), and severed the offending portions *Page 20 
from the statutes. As a result, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences. Foster, supra.
 {¶ 65} Because appellant's sentence was based on an unconstitutional statute, it is deemed void. The appellant is entitled to a new sentencing hearing, although the parties may stipulate to the sentencing court acting on the record before it. Foster, supra.
 {¶ 66} In accordance with the decision in Foster involving appeals with sentencing claims pending on review, we vacate appellant's sentence and remand this case to the trial court for a new sentencing hearing.
Convictions affirmed, sentence vacated, and cause remanded for resentencing.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for proceedings consistent with this opinion.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 21 
 ANTHONY O. CALABRESE, JR., J., and MARY EILEEN KILBANE, J., CONCUR. *Page 1