JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Renee Barnes, appeals her convictions for aggravated murder, aggravated robbery, aggravated burglary, and kidnapping. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} Appellant was indicted on multiple charges on March 31, 2005.[1] She opted for a jury trial, and the following counts were submitted to the jury: count one, aggravated murder, in violation of R.C. 2903.11; count two, aggravated robbery, in violation of R.C.2911.01; count three, aggravated burglary, in violation of R.C. 2911.11; and count four, kidnapping, in violation of R.C. 2905.01 (all first degree felonies). The jury found her guilty on all four counts. She was sentenced to life in prison with eligibility for parole after 20 years on count one and seven years in prison on each of counts two, three, and four, to be served concurrently with each other and consecutively to the sentence in count one.
 {¶ 3} The incident that gave rise to this case occurred on March 17, 2005, sometime in the late morning or early afternoon, at the victim's home in Shaker Heights. The victim was 67-year-old Ronald Howard ("Ronald"), who was the father of appellant's former girlfriend, Sharolyn Howard. Ronald was found dead in his home by his son, Steven Howard, on March 18, 2005. He had been bound with extension cords and neckties and severely beaten and strangled — 21 of his ribs *Page 4 
were broken, and he had been stomped directly on his head as he lay face up on the ground. His home had been ransacked and checks, guns, cash, and bonds stolen.
 {¶ 4} According to testimony, appellant and her son, Andrew Barnes ("Andrew"), went to Ronald's house on March 17, 2005 to retrieve items allegedly belonging to appellant. Appellant had just ended a relationship with Sharolyn a week earlier, and she wanted her possessions returned.
 {¶ 5} A police investigation revealed that a bloody footprint found on Ronald's face matched shoes owned by Andrew. In addition, Andrew's fingerprints were found on the alleged murder weapon (a saucepan) and on a strongbox in the home. In addition, various items that had been stolen from Ronald's house were found in Andrew's possession when he was arrested on March 19, 2005.
 {¶ 6} Through a series of telephone calls, appellant learned of her son's arrest and went to the scene of the arrest. While there, appellant watched from a distance, but did not speak to anyone about her son's arrest.
 {¶ 7} On March 20, 2005, Andrew confessed to killing Ronald Howard, but did not mention his mother's alleged involvement; however, on March 21, 2005, Andrew inculpated both his mother and himself in the killing. Police officers arrested appellant the following day. She gave a statement in which she claimed she had an interview on the day of the murder and that a used bus ticket would exonerate her. Retrieval of the bus ticket showed that it was time stamped for 3:09 p.m., after the *Page 5 
time of the murder. Further, according to a second statement given by Andrew, he drove appellant to the interview, she did not take the bus.
 {¶ 8} On March 24, 2005, appellant signed a written confession in which she admitted killing Ronald with a kitchen pan. According to appellant, "I hit him in the head and he fell. And I drug him up the steps through the kitchen to the living room and I let him lay there and I went through his house turning stuff up so it would appear like it was a robbery." This information was corroborated by the testimony of Detective John Saraya and Dr. Joseph Felo, who both testified that there was a circular indentation in Ronald's head that was consistent with the bloody saucepan found at the scene. In addition, the police officers searched appellant's home on March 25, 2005 and found Ronald's cell phone, which contained appellant's DNA.
 {¶ 9} The state theorized that Andrew Barnes was the principal offender and that appellant, her son's accomplice, was the catalyst for the killing. The state attempted to prove that appellant and her son beat Ronald to death. Trial testimony indicated that the motive was theft and robbery.
 {¶ 10} At the first trial, which ended in a mistrial, Andrew testified against his mother in exchange for a plea agreement. At the second trial, he refused to cooperate, but his testimony from the first trial was read to the jury. According to Andrew's testimony, he and his mother went to Ronald's house to retrieve a microwave and baker's rack. After Andrew went downstairs in search of the items, he came back upstairs because he heard a commotion. He discovered Ronald on *Page 6 
top of his mother on the floor. In response, Andrew kicked Ronald in the head. He then hit Ronald with the pan. When Ronald asked Andrew for help, he attempted to help him up; however, his mother ordered him to leave the man on the floor. Appellant instructed Andrew to help her open several safe deposit boxes. Finally, appellant ransacked the entire house.
 {¶ 11} Appellant brings this appeal asserting five assignments of error for our review[2] . Because assignments of error I, II, and V are substantially interrelated, they will be addressed together.
 {¶ 12} "I. The trial court erred in overruling appellant's motion to suppress her statements to the Shaker Heights police, where no valid waiver of her constitutional rights was made.
 {¶ 13} "II. The trial court erred in overruling appellant's motion to suppress her statements to the Shaker Heights police, where those statements were not made voluntarily.
 {¶ 14} "V. The trial court erred in overruling appellant's motion to suppress her statement to the Shaker Heights police, where she was held without the proper filing of an arrest warrant, in violation of her sixth amendment right to counsel." *Page 7 
 {¶ 15} "Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence." State v. Lloyd (1998), 126 Ohio App.3d 95, 100. See, also,State v. Winand (1996), 116 Ohio App.3d 286, 688 N.E.2d 9, citingTallmadge v. McCoy (1994), 96 Ohio App.3d 604, 645 N.E.2d 802. This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.
 {¶ 16} A suspect's waiver of his Fifth Amendment right to legal counsel and against self-incrimination must be shown before her statements are admissible at trial. Waivers must be voluntary and intelligent. Brady v. United States (1970), 397 U.S. 742, 90 S.Ct. 1463,25 L.Ed.2d 747. The court must "indulge in every reasonable presumption against waiver." Brewer v. Williams (1977), 430 U.S. 387, 97 S.Ct. 1232,51 L.Ed.2d 424. The test to determine whether a knowing and intelligent waiver was made requires an inquiry into the totality of the circumstances. Miranda v. Arizona (1966), 384 U.S. 436, 475-77,86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 17} Appellant contends that her confession is not admissible because she did not waive her constitutional rights to counsel and against self-incrimination. We *Page 8 
disagree. It is clear that appellant lawfully waived her rights. She signed a typewritten statement, which contained sufficient warning regarding the waiver of constitutional rights. According to the testimony of Sgt. Marvin Lamielle, the police procedure includes giving the suspect an opportunity to read his or her statement to make sure it is accurate. The individual then signs it, indicating that he or she read it, and it is the truth. Sgt. Lamielle testified that this exact procedure was used with appellant. A review of the totality of the circumstances proves that appellant clearly waived her rights.
 {¶ 18} Appellant also argues that her statement was not made voluntarily. "In deciding whether a defendant's confession * * * was involuntarily induced, the court should consider the totality of the circumstances including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, 40-41, 358 N.E.2d 1051.
 {¶ 19} Nothing in the record indicates that appellant's age, mentality, or prior criminal record is relevant. She was interrogated for a little over two hours on two separate days, and there is no evidence of mistreatment or the existence of a threat. Appellant contends that the Shaker Heights police officers beat her in an effort to get a confession; however, the facts do not support her contention. At some point, she was transferred to the Beachwood police department. According to Sgt. Gary *Page 9 
Haba of the Beachwood police department, upon arrival at his department, appellant had "a visible scrape under her jaw and behind her left ear on arrival. She alleges they were incurred by being restrained by [Shaker Heights police department] officers * * *." Haba testified that there were small scrapes under her chin and behind her left ear.
 {¶ 20} Sgt. Lamielle testified regarding appellant's alleged abuse. "She was sitting in the interview room * * * she kept moving her chair * * * out of the camera sight to where she could not be monitored. * * * We walked in and asked her to leave the chair where it was, and she began to push at us as we tried to move the chair back. * * * She started screaming and became irrate and eventually had to be put in what's called a restraint chair." According to Sgt. Lamielle, that was the only time appellant was physically restrained by the police. Based on the foregoing evidence, it is clear that appellant was not physically mistreated, that she knowingly waived her rights, and that her confession was voluntarily made.
 {¶ 21} In her supplemental brief, appellant also argues that her motion to suppress should have been granted because "she was held without the proper filing of an arrest warrant, in violation of her Sixth Amendment right to counsel." We disagree.
 {¶ 22} A warrant ("the first warrant") for appellant's arrest for aggravated burglary was issued on March 21, 2005, and she was arrested the following day, March 22, 2005. On March 22 and March 24, appellant made statements to Sgt. *Page 10 
Lamielle. Appellant argues that, because the return of the first arrest warrant was not filed with the court, no court appearance was scheduled and no attorney was assigned to her. Therefore, she concludes, her statements to the police during the time frame of March 22 through March 24 should be suppressed as being in violation of her Sixth Amendment rights.
 {¶ 23} Under Ohio Crim.R. 4(D)(4), "the officer executing a warrant shall make return of the warrant to the issuing court before whom the defendant is brought * * *." A review of the record shows that the first warrant was not returned to the court; however, another warrant ("the second warrant") for aggravated murder was issued and executed on March 24, 2005. That warrant was properly returned to the court on that same day. There is no evidence to indicate that, even if the first warrant had been returned on March 22, appellant would have been arraigned and had counsel assigned on March 23. Further, as discussed above, appellant voluntarily waived her right to an attorney on both March 22 and March 24. Therefore, because the second arrest warrant was properly returned to the court and because appellant properly waived her right to have an attorney, we conclude that her Sixth Amendment rights were not violated. Appellant's first, second, and fifth assignments of error are overruled.
 {¶ 24} We next address assignments of error III and IV together because they are substantially interrelated. *Page 11 
 {¶ 25} "III. The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to convict appellant.
 {¶ 26} "IV. Appellant's convictions were against the manifest weight of the evidence."
 {¶ 27} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, citing Jackson v.Virginia (1979), 443 U.S. 307. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259; Jackson v.Virginia, supra.
 {¶ 28} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of *Page 12 
the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squirev. City of Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 29} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The Court held in Tibbs v.Florida, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 30} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Martin at 720.
 {¶ 31} Appellant argues that the evidence incriminates her son as the murderer. While this is true, it is irrelevant. Andrew was prosecuted as the principal *Page 13 
offender of aggravated murder in this case. Appellant was charged as the catalyst, agitator, and accomplice to aggravated burglary, aggravated robbery, and aggravated murder. These charges were supported by sufficient evidence.
 {¶ 32} Appellant's convictions are sufficiently supported by her son's testimony, which was corroborated by the physical evidence found at the scene, by her signed statement, and by the fact that appellant's DNA was found on Ronald's cell phone, which was discovered in her home. Finally, Sharolyn also testified as to motive. Clearly, there was sufficient evidence to convict appellant.
 {¶ 33} Appellant also argues that her convictions were against the manifest weight of the evidence. She argues that her son's testimony was not believable and that there was no evidence that she was even at Ronald's house the day of the murder. These arguments were rejected by the jury.
 {¶ 34} The jury found Andrew's testimony to be credible and chose to give credit to that testimony. From his testimony, it was clear that appellant was the accomplice and catalyst for the crimes committed because Andrew did not know Ronald, did not know where he lived, and had no motive to kill him.
 {¶ 35} Sharolyn's testimony provided a motive. She testified that appellant needed money and that she had a conversation with appellant regarding the probability that Ronald had a lot of money in his home. There was evidence that appellant did not like Ronald because he disapproved of her relationship with his *Page 14 
daughter. Finally, appellant was also angry with Sharolyn because of their recent breakup.
 {¶ 36} Based on the evidence, it is clear that the jury did not lose its way in convicting appellant. We do not find that appellant's convictions were against the manifest weight of the evidence. Accordingly, appellant's third and fourth assignments of error are overruled.
 {¶ 37} Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and MARY J. BOYLE, J., CONCUR
[1] Appellant was originally indicted on multiple counts; however, some counts were dismissed. The remaining four counts were renumbered for purposes of clarity.
[2] Appellant's initial brief contained four assignments of error, and her supplemental brief contained an additional assignment of error, which we will refer to as "Assignment of Error V." *Page 1